UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESMOND JONES, | No. 2:21-cv-01603-TLN-EFB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CAMPBELL, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. ECF No. 1. On April 29, 2022, pursuant to 28 U.S.C. § 1915A(a), the court determined that plaintiff's third amended complaint (TAC) (ECF. No. 17) alleged potentially cognizable Eighth Amendment claims for deliberate indifference to medical needs against defendants Tyler Campbell and La Don Silva. ECF No. 19. Defendants now move for summary judgment. For the following reasons, the motion for summary judgment should be granted.

**I.     The Complaint**

The TAC alleges that in August of 2020, plaintiff's primary care provider, defendant Dr. Tyler Campbell at the California Men's Colony (CMC), and defendant LaDon Silva, a registered dietician nurse at the California Department of Corrections and Rehabilitation (CDCR) headquarters in Sacramento, discontinued plaintiff's order of Ensure, knowing that plaintiff drank it to control the effects of moderate to severe malnutrition caused by hyperthyroidism. Plaintiff

1

also alleges that defendants knew that plaintiff needed Ensure, which has immune boosting properties, because of plaintiff's compromised immune system caused by the medication methimazole. On December 21, 2020, plaintiff became infected with Covid-19 and remained symptomatic through January 11, 2021. He alleges that by February of 2021, he had dropped from 155 pounds to 138 pounds. He further asserts that when he complained to Campbell, Campbell denied responsibility, claiming that Silva had declined to order more Ensure for plaintiff. ECF No. 17 at 6. Plaintiff alleges that Silva did not order more Ensure for plaintiff until August of 2021, at which point plaintiff had lost twenty pounds. *Id.* at 10.

## II.   The Parties' Factual Contentions and Evidence

Defendants maintain that when plaintiff arrived at CMC in August 2015, he had recently been diagnosed with hyperthyroidism, which results in the thyroid making and releasing high levels of thyroid hormone. Plaintiff's Depo. (ECF No. 38) at 14-16, 21; Campbell Decl. (ECF No. 37-5) at ¶ 4. Hyperthyroidism can result in weight loss, in addition to other side effects. Campbell Decl. (ECF No. 37-5) at ¶ 5. Methimazole, which can reduce the amount of thyroid hormone in the body, is one medication used to treat hyperthyroidism. *Id.* at ¶ 6. While on methimazole, a patient may develop a condition called agranulocytosis which elevates the risk of infection; this side effect, however, is reportedly rare, at between 0.1-0.5% of patients. *Id.* at ¶¶ 7-9.

Defendant Campbell was plaintiff's primary care physician during his entire incarceration at CMC, beginning in 2015. Plaintiff's Depo. (ECF No. 38) at 22-23; 37; Campbell Decl. (ECF No. 37-5) at ¶ 4. Plaintiff testified that he thought defendant Campbell was looking out for his best interest. Plaintiff's Depo. (ECF No. 38) at 37. Defendant Campbell prescribed methimazole to plaintiff, referred him to an endocrinologist, and monitored plaintiff's white blood cell count for agranulocytosis. Campbell Decl. (ECF No. 37-5) at ¶¶ 10-21. By April 2020, plaintiff's thyroid hormone levels were within the normal range. Campbell Decl. (ECF No. 37-5) at ¶ 19.

In addition to prescribing methimazole, defendant Campbell initially prescribed Ensure (which contains 250 calories per can) to plaintiff. Plaintiff received six cans daily. Campbell Decl. (ECF No. 37-5) at ¶ 17; Silva Decl. (ECF No. 37-6) at ¶¶ 11-13. In August 2020,

defendant Silva received an order to renew plaintiff's order for Ensure. Silva Decl. (ECF No. 37-6) at ¶ 13. Based on the applicable procedures, defendant Silva calculated plaintiff's BMI and determined that, because it was within the normal range, plaintiff did not require extra calories from Ensure. *Id.* at ¶¶ 13-14; *see also* Ex. 3 (plaintiff's progress notes) to Campbell Decl. (ECF No. 37-5). Plaintiff's medical records indicate that the Chief Physician and Surgeon agreed with the recommendation to discontinue the order for Ensure, as did defendant Campbell. Plaintiff's order for Ensure was discontinued on August 21, 2020. *Id.*

Plaintiff was subsequently seen by an endocrinologist in November 2020; while plaintiff had lost some weight, his BMI remained within the normal range. Campbell Decl. (ECF No. 37-5) at ¶¶ 25, 31-32 and Exs. 5 and 7. While the endocrinologist indicated that plaintiff could restart Ensure, defendant Campbell rejected this recommendation because plaintiff's BMI was in the normal range, and a dietician calculated that the CDCR diet was meeting plaintiff's nutritional and caloric needs. *Id.* at ¶¶ 25, 31-32 and Exs. 5 and 7.

In December 2020, plaintiff tested positive for Covid-19. Plaintiff's Depo. (ECF No. 38) at 52; Campbell Decl. (ECF No. 37-5) at ¶ 27. Plaintiff was placed in isolation and his vital signs were monitored by the nursing staff. Plaintiff's Depo. (ECF No. 38) at 52-56; Campbell Decl. (ECF No. 37-5) at ¶ 27 and Ex. 6. Plaintiff's vital signs remained normal, and no symptoms of Covid-19 were recorded. *Id.* Plaintiff was released from isolation on January 11, 2021. Campbell Decl. (ECF No. 37-5) at ¶ 27 and Ex. 6. There was no indication that plaintiff had agranulocytosis. *Id.*

When plaintiff met with defendant Campbell in February 2021, he weighed less than he had at his November 2020 endocrinology visit. Campbell Decl. (ECF No. 37-5) at ¶¶ 25, 30-32 and Ex. 7. His BMI remained in the normal range, however, and defendant Campbell determined that Ensure was still not indicated for plaintiff. *Id.* Defendant Campbell did order blood work for plaintiff. *Id.*

Plaintiff then submitted a healthcare appeal, requesting that he be provided with Ensure. Silva Decl. (ECF No. 37-6) at ¶ 15. Defendant Silva reviewed plaintiff's medical records, and determined that plaintiff's BMI remained in the normal range, and that the CDCR diet provided

him with adequate calories. *Id.* at ¶¶ 15-17 and Ex. 6. Defendant Silva thus declined to reinstate plaintiff's Ensure order. *Id.* at ¶¶ 15-18 and Ex. 12. Plaintiff's thyroid-related hormone levels were "at goal" at this time, and his BMI remained within the normal range. Campbell Decl. (ECF No. 37-5) at ¶ 33-34 and Exs. 8-9.

In August 2021, plaintiff's Ensure order was reinstated. *Id.* at ¶ 36 & Ex. 11. While plaintiff's BMI remained in the normal range, it had fallen slightly below 20 and was no longer in the ideal range. *Id.* Plaintiff's BMI then rose to about 20 and remained there until defendant Campbell's last visit with plaintiff in February 2022. *Id.* at ¶ 37. Plaintiff was released from custody in April 2022 and his weight has remained stable. Plaintiff's Depo. (ECF No. 38) at 19, 70. He sees a doctor for his hyperthyroidism about twice a year, and his dosage of methimazole is the same. *Id.* Defendants maintain that, because plaintiff's weight remained in the normal range and he did not develop agranulocytosis, plaintiff did not suffer any physical injury that would entitle him to relief.

Plaintiff has submitted a separate statement of disputed material facts.[1] ECF No. 44-1. Plaintiff's primary areas of disputes are as follows. Plaintiff contends that his weight loss was more than ten percent of his body weight after defendants discontinued his Ensure. *Id.* at ¶¶ 8, 15, 16. Specifically, he says he lost seventeen pounds between August 21, 2020 and February 11, 2021, and an endocrinologist described the weight loss as significant. *Id.* at ¶¶ 15, 23. Plaintiff also points to CDCR policy stating that a weight loss of at least ten percent qualifies (but does not mandate) an inmate for Ensure supplementation and contends that Ensure was also important to boost his compromised immunity. *Id.* at ¶¶ 4, 8. Plaintiff also states that his hyperthyroidism put him at severe risk for complications of Covid-19, and that, contrary to defendants' assertion that he was asymptomatic, he experienced hot and cold flashes, a runny nose, and a headache when he was infected with Covid-19. *Id.* at ¶¶ 18-21.

////

////

---

[1] Plaintiff's separate statement of facts also includes defendant's facts with which plaintiff is in agreement.

### III. Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters

which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to

demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with their motion for summary judgment, defendants advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 37-3; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999).

**IV.     Eighth Amendment Standard**

To succeed on an Eighth Amendment claim predicated on deliberate indifference to medical need, a plaintiff must establish that: (1) she had a serious medical need; and (2) the defendant's response to that need was deliberately indifferent. *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment, or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant will be liable for violating the Eighth Amendment if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

It is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Rather, plaintiff must show a deliberate disregard for a known medical need. The Ninth Circuit has made clear that a difference of medical opinion is, as a matter of law, insufficient to establish deliberate indifference. *Toguchi*, 391 F.3d at 1058. "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

**V.      Analysis**

The gravamen of plaintiff's claim is that defendants discontinued his liquid nutritional supplement, despite his diagnosis of hyperthyroidism. According to plaintiff, this caused him to lose weight, and put him at risk of severe complications from a subsequent Covid-19 infection.

The parties agree that an unintended loss of ten percent of body weight over six months is considered medically significant and may require medical intervention. Campbell Decl. (ECF No. 37-5) at ¶ 12-13; Silva Decl. (ECF No. 37-6 at ¶ 16; ECF No. 44-1 at ¶ 23. They disagree,

however, as to whether plaintiff lost over ten percent of his body weight within six months after his Ensure was discontinued. When plaintiff's Ensure was discontinued in August 2020, plaintiff alleges that he weighed 155 pounds. Plaintiff's Opp. (ECF No. 44) at 5, 36. According to defendants, however, plaintiff's weight was not measured in August 2020; rather, defendant Silva used plaintiff's most recently recorded weight of 154, which was taken in May 2020.[2] Silva Decl. (ECF No. 37-6) at ¶ 13. Thus, defendants argue, when plaintiff was weighed again in February 2021, he had lost approximately ten percent of his weight in nine months (since May 2020), not six months (since August 2020).

      For the purposes of this motion, given the unclear record, the court must assume that plaintiff did lose ten percent of his body weight in six months, which defendants acknowledge would be a medically significant fact. Campbell Decl. (ECF No. 37-5) at ¶ 12-13; Silva Decl. (ECF No. 37-6) at ¶ 16. Although plaintiff may have last been officially weighed in May 2020, there is no indication on the medical note proffered by defendant (Campbell Decl. (ECF No. 37-5) at Ex. 3) that plaintiff weighed less than that in August 2020 at the time the Ensure was discontinued. In addition, plaintiff's BMI and estimated calorie needs – and the concomitant decision to discontinue the Ensure – were based on the recorded weight of 70 kg, and thus seemingly on the assumption that his weight had remained stable since it was last officially measured. Campbell Decl. (ECF No. 37-5) at Ex. 3; Silva Decl. (ECF No. 37-6) at ¶¶ 13-14.

      Even if plaintiff did experience a medically significant amount of weight loss as a result of defendants' order to discontinue Ensure, however, nothing in the record supports the conclusion that defendants knowingly disregarded plaintiff's serious medical needs. The record establishes that plaintiff's weight and hormone levels were regularly monitored, his hyperthyroidism was controlled, and his calorie and nutritional needs were carefully calculated and determined to be met by the CDCR diet. While plaintiff's weight did drop during the period of time the Ensure was discontinued, it remained within the "normal" BMI range. When his BMI was still "normal" but no longer in the "ideal" range, defendant Campbell reinstated plaintiff's Ensure order. Once

---

[2] The document in questions lists plaintiff's weight as 70 kg, which is approximately 154.3 pounds. Campbell Decl. (ECF No. 37-5) at Ex. 3.

the Ensure was restarted, plaintiff's BMI went from just below 20 to 20. Campbell Decl. (ECF No. 37-5) at ¶¶ 12, 36-37 & Ex. 11. Plaintiff does not contest the facts regarding his BMI and the reinstatement of the Ensure. ECF No. 44-1 at ¶ 28.

Plaintiff nonetheless argues that ending his Ensure was deliberate indifference towards his health needs, and that defendants knew that plaintiff would suffer from chronic weight loss without Ensure. The record simply fails to support that argument. Even if defendants' conclusion that plaintiff no longer needed Ensure was mistaken (and plaintiff has not presented any evidence that it was), that is not enough to establish deliberate indifference. Such an error, at most, would simply establish negligence. Deliberate indifference demands a finding that defendants subjectively knew of and deliberately disregarded a risk to plaintiff's health. *See Toguchi*, 391 F.3d at 1057; *see also Lemire v. Cal. Dep't of Corr. & Rehab.,* 726 F.3d 1062, 1081 (9th Cir. 2013); *Acinelli v. Baniga*, 2019 WL 1643248, at *6 (E.D. Cal. Apr. 16, 2019) (finding that when defendants reasonably believed that a prisoner's dietary needs were being met by the CDCR diet, and thus that supplementation was not indicated, plaintiff could not show deliberate indifference in violation of the Eighth Amendment). Plaintiff has failed to demonstrate that defendants acted with such purpose.

Plaintiff maintains that an endocrinologist with whom he had an appointment in November 2020 indicated that he could restart Ensure, but his request was still declined. Campbell Decl. (ECF No. 37-5) at ¶¶ 25, 31-32 and Exs. 5 and 7. But a difference of medical opinion is insufficient to establish deliberate indifference. *Toguchi*, 391 F.3d at 1058. And given that plaintiff's BMI remained in the normal range at that time, plaintiff cannot establish that defendant Campbell's determination that Ensure was still not indicated for plaintiff is evidence of deliberate indifference to plaintiff's medical needs.

Plaintiff also argues that ending his Ensure and his subsequent weight loss put him at greater risk of developing severe Covid-19 symptoms, and that defendants were deliberately indifferent to this risk. Plaintiff also appears to be arguing that defendants should have tested him for agranulocytosis during the two-week period of his Covid-19 infection, because the symptoms can be similar. Even assuming for the purposes of this motion that plaintiff suffered minor

symptoms of hot and cold flashes, a runny nose, and a headache during his infection, there is nothing in the record to indicate that defendants acted with deliberate indifference to plaintiff's medical needs during his Covid-19 infection. To begin with, defendants were not responsible for plaintiff's health care during his infection, as he was under the care of other medical personnel. Campbell Decl. (ECF No. 37-5) at ¶ 28. Furthermore, plaintiff was monitored by nursing staff twice daily during his isolation period. *Id*. at ¶ 27 & Ex. 6; Plaintiff's Depo. (ECF No. 38) at 56. During that time, plaintiff's vital signs remained normal, and he did not develop severe Covid-19 symptoms. *Id.* Finally, according to defendant Campbell, the risk of agranulocytosis typically appears during a patient's early treatment with methimazole, and plaintiff was well past that time. Campbell Decl. (ECF No. 37-5) at ¶ 9. In sum, plaintiff does not submit any evidence tending to show that defendants should have tested him for agranulocytosis during his Covid-19 infection, and that not doing so demonstrated deliberate indifference to his medical needs.

To prevail on his claim, plaintiff must demonstrate more that a difference of opinion with his medical providers; he is required to "show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d at 1058. This he cannot do. Rather, taken as a whole, the record here could not lead a rational trier of fact to find that defendants acted in conscious disregard of plaintiff's medical needs when they rescinded his Ensure supplementation and did not test him for agranulocytosis during his Covid-19 infection. As such, there is no "genuine issue for trial", *Matsushita*, 475 U.S. at 587 (citation omitted), and defendants are entitled to summary judgment.[3]

### VI.     Recommendations

In accordance with the above, it is RECOMMENDED that defendants' motion for summary judgment (ECF No. 37) be granted.

These findings and recommendations are submitted to the United States District Judge

---

[3] Defendants also argue that they are entitled to qualified immunity. Because the court finds that defendants are entitled to summary judgment, it is not necessary to address this additional argument. *See County of Sacramento v. Lewis,* 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 22, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE